No. 28,955.

T. F. McCLEERY et al., *Appellants*, v. THE McCLEERY LUMBER COMPANY et al., *Appellees*.

(283 Pac. 647.)

Opinion filed January 11, 1930.

*W. R. Hazen,* of Topeka, for the appellants.
*Edwin A. Austin,* of Topeka, for the appellees.

The opinion of the court was delivered by

JOHNSTON, C. J.: This appeal is another chapter in a long-continued litigation. The action was brought. on January 23, 1918, by T. F. McCleery and A. B. Vaughn, two stockholders of the McCleery Lumber Company, who also were directors of that company, against stockholders, creditors and other interested parties.

The McCleery Lumber Company, which was in financial trouble, sold and transferred its stock in trade consisting of building material, coal and its equipment to the McCleery-Dudley Lumber Company. Part of the consideration was paid in cash and part in shares of stock of the McCleery-Dudley Lumber Company. In the course of the action through the courts many hearings were had and a number of decisions were made upon pleadings and other phases of the case, some of which reached this court, upon appeals. In these appeals recitals of the issues, proceedings and rulings made from time to time have been set forth, which render it unnecessary to repeat them at length in this appeal. (*McCleery v. Dudley,* 118 Kan. 544, 235 Pac. 839; *McCleery v. McCleery-Dudley Lumber Co.,* 120 Kan. 281, 243 Pac. 541; *McCleery v. McCleery Lumber Co.,* 124 Kan. 185, 257 Pac. 748.) To obtain funds to meet the indebtedness of the company, loans had been procured from the

Topeka State Bank based on notes of the company, one for $8,000, one for $4,000, and one of C. G. McCleery for $4,000, all of which were secured by shares of stock of the company, and the payment of these notes was also guaranteed by Guilford Dudley and C. G. McCleery.

In May, 1917, a judgment was obtained against the company by a creditor, Adam Becker, for $8,300, which was assigned to Dudley under an agreement with McCleery. This transaction was the subject of consideration in *McCleery v. Dudley*, 118 Kan. 544, 235 Pac. 839. Early in the litigation a receiver was appointed who was authorized to take such action as was necessary to protect and conserve the assets of the old company, from which debts were to be paid, and to report his actions to the court. In July, 1922, a judgment was rendered in the action which finally determined the indebtedness of the old company except as to payments of interest on bank loans by Dudley, with checks of the McCleery-Dudley Lumber Company, after the rendition of the judgment in 1922.

Guilford Dudley died on March 28, 1923, and his wife, Hazel F. Dudley, who was the sole legatee under the will, was duly appointed executrix of the Dudley estate. After revivor proceedings had been had she and the McCleery-Dudley Lumber Company joined in filing an answer and cross petition, to which plaintiffs replied. An independent action was brought by plaintiffs on the theory that they were the statutory trustees of the company and had the right to bring and maintain an action for the settlement of the business of the defunct corporation. This action was dismissed because a receiver had been appointed in the first action to wind up the affairs of the corporation, who was still acting. The receiver had been appointed on the application of the plaintiffs in the earlier action and he represented them and other interested parties, all of whom had been made parties in the first action. (*McCleery v. McCleery-Dudley Lumber Co.*, 120 Kan. 281, 243 Pac. 541.)

The litigation proceeded in its halting way towards the winding up of the affairs of the old corporation and a final accounting. The executrix paid off the debts to the bank which had demanded payment, and took an assignment of the capital stock deposited as collateral in the bank, for the bank loans. She applied to the district court for permission to sell the stock. Before action was taken on the application she applied to the probate court for permission to dispose of the stock, which was granted. As she was required to

report to the probate court the assets and obligations of the Guilford Dudley estate, which report was on file in that court, she assumed that as Guilford Dudley had guaranteed the bank notes and owed certain obligations, it was incumbent on her to obtain an order from the probate court to sell the stock, and afterwards a sale was made by her without an order of the district court, in which the whole matter, including the disposition of the stock, was before that court. A question was raised upon a demurrer to pleadings as to the authority of the probate court to direct a sale of the stock and thus deprive the district court of its jurisdiction to supervise the sale and determine whether a fair price had been obtained for the stock. In effect the trial court said that the sale might be legal so far as the settlement of the estate of Guilford Dudley was concerned, but that the district court, in which the controversies between the contending parties were pending, still retained jurisdiction to set aside or confirm the sale, and to determine the rights of all parties at the final disposition of the case. The court stated in respect to its jurisdiction that—

"It should not be inferred that it is intended that the sale made by the executrix should necessarily be set aside or not confirmed provided that a fair price was obtained. In my opinion the power exists to confirm or set aside the sale." (*McCleery v. McCleery Lumber Co.*, 124 Kan. 185, 190, 257 Pac. 748.)

This decision left for determination the question of the validity of the sale; that is, whether a sale of the stock was made for a fair price and should be confirmed or whether it should be set aside, together with a final accounting and winding up of the affairs of the old company. Following this decision Frank E. Miller was appointed as referee on the application and with the approval of the parties to the action. He was directed to hear the evidence and make findings of fact and conclusions of law as to the validity of the sale of stock which had been assigned to the executrix upon the payment of the debts to the bank; that is, as to whether the sale was fairly made, and for a fair and reasonable price, and whether it should be confirmed or set aside. He was directed to take an accounting of the affairs of the McCleery-Dudley Lumber Company and find all facts and circumstances deemed necessary as to the validity of the sale of stock. Hearings were had before the referee upon which he made seventy-five findings of fact upon the issues submitted to him. After stating the facts as to the sale of

the lumber business, the outstanding accounts and equipment, and some other property of the old company to its successor for an agreed consideration of $26,308.15, and of some other matters not now material, he found that the charter board had declared the charter of the old company forfeited on May 16, 1919, for failure to file an annual report as required by law with the secretary of state, which it appears should have been filed before March 31, 1917, and that this forfeiture had never been set aside.

As to the sale of the shares of stock it was found that the bank had demanded payment of the notes guaranteed by Guilford Dudley, and for the payment of which the shares had been deposited as security; that the executrix redeemed and took up the notes which were duly assigned to her by the bank, together with the guaranteed notes signed by Dudley, and that the notes together with 199 shares of stock held as collateral were delivered to her. It was also found that the liabilities of the Dudley estate amounted to about $90,000, and that in order to pay the indebtedness practically all of the property of the estate, which consisted mainly of real estate and the 200 shares of stock in the new lumber company, was placed upon the market with the shares of stock transferred by the bank. Through her father, A. Fassler, the executrix undertook to dispose of the 400 shares which represented the property of the McCleery-Dudley Lumber Company, of which she was president. He employed a lumber broker to find a purchaser. A complete inventory of the property of the company was taken, which showed a value of $57,118.98. It appears that the receiver had also made efforts to sell the shares of stock owned by the old company without success. On August 6, 1923, the executrix, through her attorney, informed the receiver of the purpose to sell the collateral shares of stock under the terms of the note in which it was stipulated that the payee or its assigns might sell the collateral securities at public or private sale without notice in default of payment of the note. As stated the sale was made of the entire capital stock, including the 199 shares in question, to T. F. Martin and his associates, for $120 a share, and from the evidence the referee found that to make a sale at a fair market value it was necessary to sell the entire capital stock of 400 shares. The referee further found that the sale of the stock by Hazel F. Dudley was a fair sale made in good faith and without any intent to defraud or injure the rights of the plaintiffs or others, and that the price offered was a fair market value

thereof and the highest price that could be obtained at the time. The conclusion of law accorded with the findings of fact.

Upon motions attacking the report of the referee and asking for a new trial the court, at the end of a hearing, confirmed the findings and conclusions with a slight modification of one finding of the referee and overruled the motion for a new trial. Upon this appeal the plaintiffs contend that the sale was made under an order of the probate court, which was without authority to make the order; that the whole matter of the settlement of the affairs of the corporation was pending in the district court and within its jurisdiction; and that no action of the probate court could deprive the district court of the power to adjudicate every feature of the settlement, and therefore the sale was void. In a prior decision it was determined that the action of the probate court respecting the sale of the shares of stock did not deprive the stockholders of the old corporation from having an inquiry into and a decision by the district court as to the validity of the sale and the winding up of the affairs of that company. This conclusion was approved in this court in *McCleery v. McCleery Lumber Co.*, 124 Kan. 185, 257 Pac. 748. It may be granted that so far as this action is concerned the order of the probate court was without effect. That authority should have been obtained from the district court. The presentation to the probate court of transactions relating to the assets and liabilities of Guilford Dudley may have been necessary and proper so far as the settlement of the Dudley estate was concerned, but it did not warrant an intrusion by the probate court upon the jurisdiction of the district court to adjudicate the issues involved in the action to wind up the affairs of the corporation, including the disposition of the stock and the proceeds thereof. After that question has been determined the matter of the sale of the stock, including the inquiry whether it was made in good faith for a fair price and should be confirmed, was submitted to the district court at the instance of all the parties with the result already stated. It has been approved by the court which had full power to determine the good faith and fairness of the transaction, and whether sold for the best price that could be obtained for it. As shown there was a recital in the notes redeemed by the executrix for the sale of the collateral deposited with them, at public or private sale without notice, on default of the payment of the notes. This of itself gave power of sale, subject, however, to the authority of the district court, whether it was

a fair one and merited approval. The parties had the consideration of the court after a full inquiry as to the circumstances of the sale, its fairness and the adequacy of the price obtained, and thus their rights have been fully protected.

Some complaint is made that the findings confirmed by the trial court are not supported by the evidence, but a careful and patient reading of the record convinces us that there is sufficient evidence to support the findings. It would be impractical to reproduce the numerous and voluminous findings here with the testimony upon which they are based. The record discloses that the referee made his findings on the issues carefully and in great detail, frankly meeting and answering the questions raised by the parties. The principal question raised was the validity of the sale of the stock, and while it was not the function of the probate court to authorize the sale which it undertook to do, it still remained a matter within the jurisdiction of the district court. The sale made, as already shown, has been fully examined by the district court and found to have been fairly made with no intention to defraud or to injure any of the parties, and for the best price that could be obtained. Having been examined and approved by the trial court, we conclude that the court had full power to approve and confirm the sale made, as full power as if it had ordered the sale before it was made.

Some of the matters questioned now were finally determined in the judgment rendered in 1922, and are not open to challenge at this time. It is urged that the Becker judgment already mentioned was void because of the declaration of forfeiture of the charter by the secretary of state. There was no decree of dissolution, but whatever the status of the corporation was the debt remained for adjudication. In the judgment of 1922, determining the indebtedness of the McCleery Lumber Company, it was adjudged that the Becker claim and judgment thereon was a liability of the company, which with the interest thereon amounted to $10,155.21. The plaintiff stockholders who were also directors had brought an action to wind up the affairs of the corporation, in which all others interested in the corporation were made parties, having for its purpose the adjustment of the Becker judgment and other claims. In a memoranda of its decision the trial court in dealing with the Becker claim and judgment said:

"The Becker judgment. Assuming, but not deciding, that this judgment was void as against the McCleery Lumber Company because of the previous

dissolution of that corporation by the charter board, and that no proper revivor of the same has been had, it is my opinion that the indebtedness represented by that judgment is still a valid claim against the assets of the McCleery Lumber Company. It appears that on July 28, 1922, this indebtedness was allowed in the judgment of that date, to which the stockholders were parties. In the final clause of that judgment it was ordered by the court that the action remain open for a final accounting and disposition of the receivership and winding up of the affairs of the McCleery Lumber Company. That is the only issue left. The claim under the Becker judgment was presented in due time by the pleadings filed by the executrix of the Guilford Dudley estate, and the issues raised on the claim are still pending and before this court for decision. As stated in the following paragraph, it is, in my judgment, too late for the stockholders to question the validity or effect of the judgment of July 28, 1922; that is, the claims then allowed must be held to be adjudicated."

Of course the directors of a defunct corporation acting as trustees may settle up its affairs by collecting its assets, paying its debts and making a disposition of the residue among creditors and stockholders, if a receiver is not appointed for that purpose. In *Razor Co. v. Guymon*, 110 Kan. 745, 205 Pac. 635, it was said:

"It may be remarked that the fact that the corporation has ceased to exist does not prevent the settlement of the corporate affairs and the winding up of its business. Upon dissolution the attorney-general may apply to a court for the appointment of a receiver to close up the corporate affairs (Gen. Stat. 1915, § 2172), and there is a further provision that if a receiver is not appointed the president and directors or managers of the affairs of the corporation at the time of the dissolution shall be trustees of the creditors and stockholders with full power to settle the affairs and collect outstanding debts and divide the moneys or other property among the stockholders, and for these purposes may maintain and defend actions in the courts." (p. 749.)

See, also, *Ruckel v. Metropolitan Life Ins. Co.*, 119 Kan. 593, 240 Pac. 409; *Spena v. Goffe*, 119 Kan. 831, 241 Pac. 257; *McCleery v. McCleery-Dudley Lumber Co.*, 120 Kan. 281, 243 Pac. 541.

Here a receiver was appointed by the court at the instance of the directors who might under certain circumstances have acted as trustee. The plaintiffs invoked this method of settlement and all parties interested in the winding up of its affairs were brought into court. The action has been pending nearly twelve years and the matter of winding up the affairs of the corporation has been in progress during that time. The receiver represented all of the parties, including the plaintiffs. They are not now in a position to challenge the method that was employed. In the situation that we have here we can see no valid objection to the validity of the adjustment made by the district court, either as to the Becker claim

or the judgment of July, 1922. We find no merit in the contention that the statute of limitations had run on any of the claims or in objections made to the admission of testimony.

We conclude that the sale of the shares of stock after approval by the district court is valid, and that the judgment rendered by the court should be affirmed. It is so ordered.

JOCHEMS, J., not participating.